IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS

| | |
|---|---|
| **Mark Quinten Gearhart** § § **Plaintiff,** § § v. § § **Michael J. Astrue, Commissioner,** § **Social Security Administration,** § § **Defendant.** § | Cause No. 3: 11-CV-278-JTK |

### ORDER AFFIRMING THE COMMISSIONER'S DECISION

Mark Quinten Gearhart sought judicial review of the denial of his application for supplemental security income.[1] Gearhart last worked as a seasonal truck driver.[2] After the seasonal job ended, Gearhart applied for disability benefits. That application was denied.[3]

Seven months later, Gearhart reapplied. He initially alleged disability beginning at age 21 due to back problems, asthma, depression, obesity, and post traumatic stress disorder. At his hearing, he amended his onset date[4] to the protective filing date of his

---

[1] *See* docket entry # 2 (complaint).

[2] SSA record at p. 141 (reporting he last worked when his seasonal job ended on Oct. 15, 2007).

[3] *Id*. at p. 129 (showing Gearhart's first application was denied on Nov. 5, 2008).

[4] *Id*. at p. 32 (moving to amend onset date).

second application.⁵ Gearhart was 37 on the amended onset date.

Gearhart alleged he could barely walk and lift nothing. He maintained he could bend not over or sit for more than 10 minutes.⁶ He contended his medications disoriented him such that he was unable to care for himself or his three minor children.⁷

**The Commissioner's decision**. After considering Gearhart's application, the Commissioner's ALJ determined that although Gearhart had severe impairments— degenerative disc disease in the lumbar area with disc bulges, morbid obesity, severe obstructive sleep apnea, depressive disorder not otherwise specified, and anxiety disorder not otherwise specified⁸—Gearhart had the residual functional capacity (RFC) to do a reduced range of light work.⁹ Because a vocational expert identified jobs a person with Gearhart's RFC could do,¹⁰ the ALJ concluded that Gearhart was not disabled under the

---

⁵Because SSI benefits are not payable prior to the date of application, the claimant must prove that he was disabled as of or subsequent to the protective filing date of his application. *See* 20 C.F.R. 416.335; *Cruse v. Bowen*, 867 F.2d 1183, 1185 (8th Cir. 1989).

⁶SSA record at p. 141.

⁷*Id*. at p. 179.

⁸*Id*. at p. 10.

⁹*Id*. at p. 12 (adding the following restrictions: occasional climbing, balancing, stooping, bending crouching, kneeling and crawling; and work where interpersonal contact was incidental to the work performed; the complexity of tasks was learned by rote, few variables, little judgment; and supervision required was simple, direct and concrete).

¹⁰*Id*. at p. 45 (identifying small products assembler).

Social Security Act.[11]  After the Appeals Council denied Gearhart's request for review,[12] the ALJ's decision became a final decision for judicial review.[13]  Gearhart filed this case to challenge the ALJ's conclusion.

**Gearhart's complaints**.  Gearhart raised a multifarious argument challenging the ALJ's RFC determination.  He maintained the ALJ failed to fully consider his physical and mental impairments, pain, and obesity.[14]  Because the unfavorable opinion addressed those matters, the question before the court is whether substantial evidence supported the determination that Gearhart could do a reduced range of light work.  Substantial evidence is less than a preponderance, but enough that a reasonable mind would find adequate to support the decision.[15]

**RFC**.  "A claimant's RFC represents the most he can do despite the combined effects of all of his credible limitations and must be based on all credible evidence."[16]  Because a

---

[11]*Id*. at p. 22.

[12]*Id*. at p. 1.

[13] *See Anderson v. Sullivan*, 959 F.2d 690, 692 (8th Cir. 1992) (stating that "the Social Security Act precludes general federal subject matter jurisdiction until administrative remedies have been exhausted" and explaining that the Commissioner's appeal procedure permits claimants to appeal only final decisions).

[14]Docket entry #14.

[15]*Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009).

[16]*McCoy v. Astrue*, 648 F.3d 605, 614 (8th Cir. 2011).

claimant's RFC must consider all credible limitations and evidence, the ALJ must assess the claimant's credibility before determining his RFC.[17]

**Gearhart's credibility**. The ALJ found Gearhart's impairments were less "severe, debilitating and/or resistant to improvement with medical treatment"[18] than alleged. In discounting Gearhart's credibility, the ALJ discussed the misuse of prescription medications, the use of illegal substances, noncompliance with medical recommendations, a sporadic work history, periodic incarceration, and inconsistent statements to healthcare providers.[19] The record contained evidence supporting those reasons, and thus, weighed against Gearhart's credibility. A reasonable mind would accept the evidence as sufficient to show Gearhart overstated the severity of his impairments. Because the ALJ properly assessed Gearhart's credibility, the court must determine whether competent medical evidence supported the ALJ's RFC determination.[20]

---

[17] *Ellis v. Barnhart*, 392 F.3d 988, 995-96 (8th Cir. 2005) ("It is the ALJ's duty to determine an applicant's RFC. Before doing so, the ALJ must determine the applicant's credibility, as his subjective complaints play a role in assessing his RFC.").

[18] SSA record at p. 18.

[19] *Id.* at pp. 19-21.

[20] *Ostronski v. Chater*, 94 F.3d 413, 418 (8th Cir. 1996) ("In determining the claimant's residual functional capacity, the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the claimant can perform in a work setting, after giving appropriate consideration to all of her impairments.").

4

**Physical impairment**. At his hearing, Gearhart identified his back as the primary source of his alleged disability.[21] The medical evidence of Gearhart's back impairment included MRIs of Gearhart's lumbar spine. The first MRI showed disc herniations at L3-4 and L4-5, but no impingement of the thecal sac or a nerve root[22] or significant canal or neural foraminal stenosis.[23] The second MRI showed diffuse bulging at L4-5 and L5-S1, but no significant stenosis of the spinal canal or of the recesses of the foramina.[24]

The MRIs were probative of Gearhart's allegation of disabling back pain because the MRIs showed no significant stenosis and no disc impingement. Spinal stenosis or disc impingement causes symptoms.[25] If a disc protrusion impinges on the thecal sac or a nerve root, a person will likely experience symptoms.[26] Symptoms include low back pain; pains in the thighs, knees, or feet; numbness; tingling; a burning sensation; muscular weakness;

---

[21]SSA record at p. 37 (testifying his back was his primary problem).

[22]*Id*. at p. 221 (statement by treating neurologist that MRI showed no obvious nerve root impingement).

[23]*Id*. at p. 218.

[24]*Id*. at p. 498 (initial visit to fourth pain specialist).

[25] *See* Mary Jeanne Krob & Laura Brasseur, 5 Attorneys Textbook of Med. (3d ed.) P 15.32 (explaining that a disc protrusion may be asymptomatic unless there is some degree of spinal stenosis or disc impingement).

[26] Dan J. Tennenhouse, Attorneys Med. Deskbook § 26:8(3) (4th ed.) ("[L]umbar nerve root compression at the spine produces the sensation of pain "radiating" down the leg along the sciatic nerve.").

and affection of reflexes.[27] Gearhart consistently complained about low back pain, but not other typical symptoms.

The MRIs supported the ALJ's determination that Gearhart could do a reduced range of light work because they showed no significant stenosis.[28] The presence of disc protrusions and some stenosis had little evidentiary value because a damaged or diseased disc does not necessarily mean a person will have pain or other symptom.[29] The MRIs

---

[27] Dan J. Tennenhouse, Attorneys Med. Deskbook § 24:17 II (4th ed.) ("When intervertebral discs are damaged, the soft contents protrude or are expelled and press against adjacent nerves. This can cause leg pain, and if severe, can result in leg weakness or paralysis.").

[28] *Accord Phillips v. Astrue*, No. 4:11–CV–854, WL 5877623, at *1-2 (E.D. Ark. Nov. 20, 2012) (rejecting allegation of disabling degenerative disc disease of the lumbar spine where MRI showed "mild" degenerative disc disease at L5–S1 with a posterior annular tear and a "small" broad-based disc protrusion in the lumbar spine, but no evidence of impingement of the thecal sac or a nerve root, disc extrusion, canal stenosis or foraminal stenosis); *Wilson v. Astrue*, No. 09–2064, WL 2268370, at *27 -28 (W.D. Ark. June 3, 2010) (determining the record did not support disability based on back, neck, or shoulder pain where radiographic testing showed small disk bulges at T2–3 and T5–6 without significant canal/foraminal stenosis, and mild degenerative disk and arthritic changes; and medical evidence documented no disk herniations, range of motion limitations, neurological deficits, or motor deficits); *Woods v. Astrue*, No. 07-5194, 2008 WL 4710692, at *10 (W.D. Ark. Sept. 10, 2008) (finding substantial evidence supported determination that back and leg pain was not disabling where MRI of the lumbar spine showed a suspected right hemilaminectomy defect at L4-5 with minimal disc bulge without significant central or lateral recess stenosis; minimal posterior disc bulge at L3-4 and L5-S1; and no abnormal enhancement suggesting discitis or vertebral osteomyelitis).

[29] *See* 2 Lawyers' Med. Cyclopedia § 16.9[C] ("Whether a patient experiences discomfort from the disc disease depends on…canal, and foramen size, as well as the percentage of disc herniated.); Dan J. Tennenhouse, Attorneys Med. Deskbook § 24:17 VII (4th ed.)

showed nothing to explain the alleged degree of pain and limitation—no evidence of disc extrusion,[30] or significant canal or foraminal stenosis.[31] Evidence of one of these conditions would have supported the alleged degree of severity and supported a further reduction in RFC. Consulting physicians opined that Gearhart could do light work with postural limitations.[32] The ALJ incorporated those limitations in Gearhart's RFC.

**Pain**. Gearhart maintained pain prevented him from just about all activity, but the medical evidence showed Gearhart's pain subsided with treatment by pain specialists.[33]

---

("Protruded disks usually cause no symptoms."); 2 Lawyers' Med. Cyclopedia § 16.9 (explaining that a disc "protrusion may or may not compress the spinal cord or nerve roots, causing neurological symptoms and signs").

[30]*See* Dan J. Tennenhouse, Attorneys Med. Deskbook § 24:17 III (4th ed.) ("Extruded disks usually cause symptoms.").

[31] Lumbar canal stenosis is the narrowing of the spinal canal or the side canals protecting the nerves. Foraminal stenosis is the narrowing of the foramen through which the nerve root exits the spinal canal. The conditions have similar symptoms: radiating pain that travels from the low back to the hips, buttocks, and the back of the leg; numbness; tingling; weakness; and sometimes cramping. *See* 2-16 Lawyers' Med. Cyclopedia § 16.32a.

[32]SSA record at pp. 208 & 458.

[33] *Id*. at p. 374 (on June 10, 2009, good relief from injection last month); p. 379 (on July 8, 2009, medications working with no side effects, except for dry mouth); p. 425-29 (on Aug. 4, 2009, medications working and pain better since injection); p. 636 (on Oct. 9, 2009, no medication side effects, medications managing pain and daily activities very well, very active since treatment); p. 621 (on Dec. 31, 2009, medications helping and tolerating more activity); p. 524 (on July 28, 2010, right side mid-back pain improved after radio frequency neurolysis). *But see id*. at p. 430 (on Sept. 1, 2009, minimal relief from lumbar epidural injection).

One month after applying for disability benefits, a pain specialist characterized Gearhart as "pretty stable."[34] Six months later, Gearhart reported being very active.[35] Nine months his application, Gearhart "remain[ed] symptom free."[36]

Continued treatment by a pain specialist required abstention from illegal substances and other pain treatment. Gearhart's third pain specialist "fired" him from treatment due to illegal drug use.[37] The fourth pain specialist reported that Gearhart responded to initial diagnostic medial branch blocks with "excellent pain relief."[38]

This evidence showed Gearhart's pain could be controlled with treatment. Because controllable pain is not disabling,[39] the medical evidence did not support a further reduction in RFC.

**Obesity**. Obesity is a nonexertional impairment which can limit a claimant's ability to work.[40] Treating physicians documented Gearhart's obesity, but never attributed

---

[34]*Id*. at p. 383.

[35]*Id*. at p. 626.

[36]*Id*. at p. 610.

[37]*Id*. at p. 613.

[38]*Id*. at p. 500.

[39]*See Brown v. Barnhart*, 390 F.3d 535, 540 (8th Cir. 2004).

[40]*Lucy v. Chater*, 113 F.3d 905, 909 (8th Cir. 1997).

physical limitation to obesity. Physicians routinely advised Gearhart to lose weight[41]—one physician warned that Gearhart would never be pain-free without drastic weight reduction[42]—but Gearhart loss little weight. Gearhart was a candidate for weight reduction surgery,[43] but Gearhart did not have the surgery.[44] Other than initially basing disability on obesity, Gearhart attributed no limitation to obesity. In the absence of evidence of limitation due to obesity, no basis existed for a further reduction in RFC.[45]

**Mental impairment**. The ALJ determined Gearhart could do unskilled work where interpersonal contact was incidental to the work performed; the complexity of tasks was learned by rote, few variables, and little judgment; and supervision required was simple,

---

[41]SSA record at p. 467 (May 8, 2008); p. 464 (July 16, 2008); p. 221 (Oct. 20, 2008); p. 358 (May 6, 2009); p. 492 (may 20, 2010); p. 498 (May 21, 2010).

[42]*Id*. at p. 464.

[43] *Id*. at p. 279 (reporting that he was in the process of getting lapband procedure for weight loss).

[44] *Id*. at p. 280 (gastric bypass on hold because he had to Little Rock or Memphis for surgery).

[45] *Accord Forte v. Barnhart*, 377 F.3d 892, 896-97 (8th Cir. 2004) (rejecting claim that ALJ erred by not considering claimant's obesity in determining RFC where treating doctors noted claimant was obese and should lose weight, but did not suggest that obesity imposed work-related limitations, and claimant did not testify that obesity imposed restrictions; treating pain management physician repeatedly reported that claimant was obese, but released claimant to work without restrictions).

direct and concrete.[46] Although Gearhart reported feeling anxious and depressed for several years, he sought treatment when he sought disability benefits.[47] He dropped out of treatment several months later.[48]

Gearhart later presented to a hospital, expressed suicidal thoughts, and reported the use of methamphetamine.[49] Gearhart was hospitalized for three days. Upon discharge, he agreed to followup with an out-patient provider,[50] but he did not do so. Instead, he returned to the out-patient mental health provider after being charged with a second "DWI for driving on my meds."[51] The medical records reflected no further contact.

Consulting psychologists opined that Gearhart could do unskilled work where interpersonal contact was incidental to the work performed; the complexity of tasks was learned by rote, few variables, little judgment; and supervision required was simple, direct

---

[46] SSA record. at p. 12.

[47] *Id*. at p. 231 (reporting to psychiatrist that he was trying to get disability and had not sought medication treatment before); p. 233 (telling examining psychologist that he was unable to work due to his back and he sought disability benefits).

[48] *Id*. at p. 273 (discharge summarizing explaining that Gearhart dropped out of treatment and had a history of non-compliance).

[49] *Id*. at pp. 440-53.

[50] *Id*. at p. 441 (agreeing to follow up with Midsouth Health Systems on 9/28/2009 for intake appointment).

[51] *Id*. at p. 519.

direct and concrete.[46] Although Gearhart reported feeling anxious and depressed for several years, he sought treatment when he sought disability benefits.[47] He dropped out of treatment several months later.[48]

Gearhart later presented to a hospital, expressed suicidal thoughts, and reported the use of methamphetamine.[49] Gearhart was hospitalized for three days. Upon discharge, he agreed to followup with an out-patient provider,[50] but he did not do so. Instead, he returned to the out-patient mental health provider after being charged with a second "DWI for driving on my meds."[51] The medical records reflected no further contact.

Consulting psychologists opined that Gearhart could do unskilled work where interpersonal contact was incidental to the work performed; the complexity of tasks was learned by rote, few variables, little judgment; and supervision required was simple, direct

---

[46] SSA record. at p. 12.

[47] *Id*. at p. 231 (reporting to psychiatrist that he was trying to get disability and had not sought medication treatment before); p. 233 (telling examining psychologist that he was unable to work due to his back and he sought disability benefits).

[48] *Id*. at p. 273 (discharge summarizing explaining that Gearhart dropped out of treatment and had a history of non-compliance).

[49] *Id*. at pp. 440-53.

[50] *Id*. at p. 441 (agreeing to follow up with Midsouth Health Systems on 9/28/2009 for intake appointment).

[51] *Id*. at p. 519.

and concrete.⁵² The ALJ incorporated those limitations in Gearhart's RFC. Incorporating the limitations into the RFC determination sufficiently accounted for mental impairment because no evidence indicated Gearhart was further impaired. To the extent Gearhart suggested he cannot work with others, unskilled work ordinarily involves working with objects, not people.⁵³

**Conclusion**. A reasonable mind would accept the evidence as adequate to show Gearhart could do a reduced range of light work. Substantial evidence supported the ALJ's decision denying Gearhart's application. The ALJ made no legal error. For these reasons, the court DENIES Gearhart's request for relief (docket entry # 2) and AFFIRMS the decision denying the application.

It is so ordered this 5th day of February, 2013.

_____
United States Magistrate Judge

---

⁵²*Id*. at pp. 393 & 437.

⁵³SSR 85-15: Titles II & XVI: Capability to Do Other Work The Medical-Vocational Rules as a Framework for Evaluating Solely Nonexertional Impairments (stating, unskilled work "ordinarily involve[s] dealing primarily with objects, rather than with data or people, and…generally provide[s] substantial vocational opportunity for person with solely mental impairments who retain the capacity to meet the intellectual and emotional demands of such jobs on a sustained basis").